IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

*** Filed ***
12:19 PM, 01 Mar, 2026
U.S.D.C., Eastern District of New York

Brian Aly

*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

   **-against-**

Apple Inc.

*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

**Complaint for a Civil Case**

Case No.  26-cv-1088

*(to be filled in by the Clerk's Office)*

Jury Trial:        ☒ Yes        ☐ No
                       *(check one)*

I.  **The Parties to This Complaint**

A.  **The Plaintiff(s)**

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

| | |
|---|---|
| Name | Brian Aly |
| Street Address | 595 Pavonia Avenue, Apartment 2601 |
| City and County | Jersey City, Hudson County |
| State and Zip Code | New Jersey, 07306 |
| Telephone Number | 646 202 0545 |
| E-mail Address | alybrian@wharton.upenn.edu |

B.  **The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  For an individual defendant, include the person's job or title (if known).  Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | Apple Inc. |
| Job or Title (if known) | Corporation |
| Street Address | One Apple Park Way |
| City and County | Cupertino, Santa Clara County |
| State and Zip Code | California 95014 |
| Telephone Number | 408 996 1010 |
| E-mail Address (if known) | |

Defendant No. 2

| | |
|---|---|
| Name | |
| Job or Title (if known) | |
| Street Address | |
| City and County | |

2

State and Zip Code _____

Telephone Number _____

E-mail Address _____

(if known)

Defendant No. 3

Name _____

Job or Title _____

(if known)

Street Address City _____

and County State _____

and Zip Code _____

Telephone Number _____

E-mail Address _____

(if known)

Defendant No. 4

Name _____

Job or Title _____

(if known)

Street Address City _____

and County State _____

and Zip Code _____

Telephone Number _____

E-mail Address _____

(if known)

## II.  Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power).  Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties.  Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case.  Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case.  In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction?  *(check all that apply)*

☐  Federal question                    ☒  Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

**A.    If the Basis for Jurisdiction Is a Federal Question**

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

_____

_____

_____

**B.    If the Basis for Jurisdiction Is Diversity of Citizenship**

1.    The Plaintiff(s)

a.    If the plaintiff is an individual

The plaintiff, *(name)*  Brian Aly , is a citizen of the State of *(name)*  New Jersey .

b.    If the plaintiff is a corporation

The plaintiff, *(name)* _____, is incorporated under the laws of the State of *(name)* _____, and has its principal place of business in the State of *(name)* _____.

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.    The Defendant(s)

a.    If the defendant is an individual

The defendant, *(name)* _____, is a citizen of the State of *(name)* _____. *Or* is a citizen of *(foreign nation)* _____.

4

b.      If the defendant is a corporation

The defendant, *(name)* __Apple Inc.__ , is incorporated under the laws of the State of *(name)* __California__ , and has its principal place of business in the State of *(name)* __California__ . *Or* is incorporated under the laws of *(foreign nation)* _____ , and has its principal place of business in *(name)* _____ .

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3.      The Amount in Controversy

The amount in controversy—the amount the plaintiff claims the defendant owes or the amount at stake—is more than $75,000, not counting interest and costs of court, because *(explain)*:

Plaintiff seeks recovery of lost salary, lost equity compensation, and consequential damages. Plaintiff's annual salary was $215,000 and annual equity compensation was $100,000.

The total damages sought exceed $75,000.

## III.     Statement of Claim

Write a short and plain statement of the claim.  Do not make legal arguments.  State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought.  State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct.  If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.  Attach additional pages if needed.

5

## A.  Factual Allegations

1.  This action arises from Defendant's written representations regarding the nature of Plaintiff's role, Plaintiff's reasonable reliance on those representations, and Plaintiff's termination shortly after raising written concerns regarding discrepancies between the written offer and the formal internal job classification assigned to him.
2.  At all relevant times, Plaintiff was employed by Defendant in its New York City office located in Manhattan, New York, and performed his job duties primarily in Manhattan.

Recruitment and Written Offer

3.  In Fall 2025, Defendant recruited Plaintiff for a position titled "Product Manager – Apple Ads Campaign Optimization."
4.  The outreach materials, interview process, and written offer letter identified the position as "Product Manager." (Exhibit A)
5.  Plaintiff accepted Defendant's written offer for that position.
6.  The offer letter expressly identified the role as "Product Manager – Apple Ads Campaign Optimization," and Plaintiff accepted the offer in reliance on that designation.
7.  In reliance on the written offer and role designation, Plaintiff:
    a.  Took a formal leave of absence from the Wharton MBA program;
    b.  Forewent participation in structured MBA recruiting;
    c.  Declined or did not pursue alternative employment opportunities;
    d.  Committed to full-time employment with Defendant.
8.  These reliance decisions were foreseeable and reasonable.
9.  Plaintiff began employment on December 15, 2025.

Discovery of Formal Internal Job Classification Discrepancy

10.  Within approximately one week of starting employment, Plaintiff discovered that Defendant had formally classified his position within its internal HR system as "ML Data Scientist ICT4."
11.  The ML Data Scientist job track is a distinct and formally recognized career path within Defendant's organization, with separate leveling, evaluation, benchmarking, and professional positioning frameworks from the Product Manager track.
12.  The internal job track designation was not disclosed to Plaintiff prior to acceptance of the written offer.
13.  Plaintiff promptly raised the discrepancy in writing, referencing the written offer letter and his reliance upon it.
14.  Defendant informed Plaintiff that the internal job classification would not be changed.
15.  Defendant further indicated that if Plaintiff did not accept the internal classification, he could "move on."

Plaintiff's Performance and Lack of Prior Warning

16.  Plaintiff continued performing assigned duties.
17.  Plaintiff created substantive work product relevant to the team's objectives.
18.  Plaintiff received informal positive feedback from colleagues regarding his work product.
19.  Plaintiff was not:
    a.  Placed on a performance improvement plan;
    b.  Provided written performance warnings;
    c.  Informed that termination was under consideration;
    d.  Given specific written notice of deficiencies requiring correction.
20.  Defendant did not provide Plaintiff with an opportunity to address or correct any alleged performance deficiencies prior to termination.

February 2, 2026 Written Communication and Termination

21.  On February 2, 2026, Plaintiff sent a written inquiry seeking clarification as to whether Defendant was unwilling to align the internal job classification with the role identified in the written offer letter.
22.  The inquiry referenced prior communications and Plaintiff's reliance concerns.
23.  The inquiry did not contain threats, ultimatums, or refusal to perform assigned duties.
24.  Within hours of that written communication, Defendant informed Plaintiff that his employment would be terminated.
25.  The termination became effective February 9, 2026. (Exhibit B)
26.  The termination letter stated that Plaintiff "failed to meet objectives and expectations" but did not identify specific deficiencies.
27.  During the termination meeting, Defendant referenced Plaintiff's written communications regarding the role discrepancy as reflecting "bad judgment."
28.  Defendant did not identify any intervening performance event between Plaintiff's February 2 written inquiry and the termination decision.
29.  Plaintiff had not been informed that his performance was deficient prior to his February 2 written inquiry.

Mitigation

30.  Following termination, Plaintiff has actively mitigated damages by applying for comparable employment opportunities and engaging in ongoing job search efforts.
31.  Plaintiff continues to mitigate in good faith.

At-Will Status

32.  Plaintiff acknowledges that his employment was at-will.
33.  Plaintiff does not claim entitlement to indefinite employment.
34.  Plaintiff seeks damages arising from Defendant's misrepresentations, reliance-inducing conduct, and termination following his written complaints regarding the discrepancy between the written offer and the formal job classification imposed.
35.  As a result of Defendant's conduct, Plaintiff suffered economic harm including loss of salary, loss of equity compensation, and disruption of academic and professional plans.

### B.    Count I – Breach of Written Employment Terms

1. Plaintiff repeats and realleges all preceding paragraphs.
2. Defendant issued a written offer letter identifying Plaintiff's position as "Product Manager – Apple Ads Campaign Optimization."
3. Plaintiff accepted employment based on that written designation.
4. Upon commencement of employment, Defendant formally classified Plaintiff under a distinct internal job track, "ML – Data Scientist ICT4."
5. The internal job track designation governs formal leveling, evaluation structure, and professional positioning within Defendant's organization.
6. Defendant refused to provide Plaintiff with the role designation described in the written offer letter.
7. Defendant's refusal to conform the formal job classification to the written representation constituted a failure to provide the formal role designation described in the written offer.
8. As a direct and proximate result, Plaintiff suffered economic damages including lost compensation and lost equity vesting.

### C.    Count II – Fraudulent Inducement

1. Plaintiff repeats and realleges all preceding paragraphs.
2. In Fall 2025, Defendant represented in writing that Plaintiff was being hired as a "Product Manager – Apple Ads Campaign Optimization."
3. At the time Defendant issued the written offer letter, Defendant had determined that Plaintiff would be formally classified within its internal HR system under the ML–Data Scientist job track.
4. Upon information and belief, Defendant's internal job track classification is established through pre-hire benchmarking and compensation approval processes that occur prior to issuance of a formal written offer.
5. Defendant did not disclose the intended ML–Data Scientist classification to Plaintiff prior to acceptance of the offer.
6. The omission of the intended internal classification rendered the written representation incomplete and misleading.
7. The formal job track designation was material to Plaintiff's decision to accept employment, as it governs long-term career trajectory, evaluation framework, and professional positioning.
8. Defendant knew, or at minimum recklessly disregarded that Plaintiff would rely on the written job title in deciding whether to accept the offer and take a leave of absence from his MBA program.
9. Defendant possessed superior knowledge regarding its internal job track classification structure that was not accessible to Plaintiff prior to acceptance of the offer.
10. Plaintiff reasonably relied on Defendant's written representation in taking the actions described above.
11. Plaintiff would not have accepted the offer had he known he would be formally classified under a distinct ML–Data Scientist job track.
12. As a direct and proximate result of Defendant's material misrepresentation and omission, Plaintiff suffered reliance-based economic harm including lost compensation and lost equity vesting.
13. The fraudulent inducement occurred prior to and independent of the termination decision.

### D.    Count III – Promissory Estoppel (Pled in the Alternative)

1. Plaintiff repeats and realleges all preceding paragraphs.
2. In the alternative, if the Court determines that the written offer letter does not constitute an enforceable contractual obligation as to the job title designation:
3. Defendant made a clear and definite promise that Plaintiff would serve in the role of "Product Manager – Apple Ads Campaign Optimization."
4. Defendant reasonably expected Plaintiff to rely on that promise in deciding whether to accept employment.
5. Plaintiff reasonably and foreseeably relied on that promise.
6. Defendant subsequently refused to provide Plaintiff with the role designation promised in the written offer.
7. Plaintiff suffered reliance-based damages as a direct result.
8. Injustice can be avoided only by awarding reliance-based damages.

### E.    Count IV – Retaliation (New York Labor Law § 740)

1. Plaintiff repeats and realleges all preceding paragraphs.
2. Plaintiff raised written concerns regarding the discrepancy between the written offer letter and Defendant's formal internal job classification.
3. In those communications, Plaintiff referenced reliance and potential legal and compliance implications arising from the discrepancy.
4. Plaintiff reasonably believed that issuing a written offer identifying a specific job title while intentionally classifying the employee under a materially different formal job track without disclosure constituted a material misrepresentation in connection with employment and conduct that Plaintiff reasonably believed constituted fraud or misrepresentation under New York common law.
5. On February 2, 2026, Plaintiff renewed his written request for clarification regarding Defendant's refusal to align the internal classification with the written offer.
6. Within hours of that written communication, Defendant terminated Plaintiff's employment.
7. Plaintiff had not been placed on a performance improvement plan, had not received written warnings, and had not been informed that termination was under consideration.
8. Defendant did not identify any intervening performance event between Plaintiff's written complaint and the termination decision.
9. The close temporal proximity between Plaintiff's written complaints and termination, combined with the absence of prior documented performance concerns, supports a reasonable inference that Plaintiff was terminated in retaliation for raising concerns regarding Defendant's written representations.
10. Defendant's stated performance rationale was inconsistent with the absence of prior documented performance concerns.
11. As a direct result of the termination, Plaintiff suffered lost wages and lost equity compensation.

**IV.**      **Relief**

State briefly and precisely what damages or other relief the plaintiff asks the court to order.  Do not make legal arguments.  Include any basis for claiming that the wrongs alleged are continuing at the present time.  Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts.  Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

### A.   Back Pay (Lost Salary)

An award of lost base salary at an annual rate of $215,000, prorated from February 9, 2026 (the effective date of termination) through the earlier of the date Plaintiff secures comparable employment or the date Plaintiff elects to re-enter his MBA program in September 2026, subject to proof at trial and offset by any interim earnings. Plaintiff has actively mitigated damages and continues to do so in good faith.

### B.   Lost Equity Compensation

An award of lost restricted stock unit compensation valued at approximately $100,000 annually, including the July 2026 vesting event that would have occurred but for termination, prorated for the same mitigation period described above, subject to proof at trial and offset by any interim earnings.

### C.   Reliance and Consequential Damages

An award of reliance-based damages proximately caused by Defendant's misrepresentation, nondisclosure, and subsequent termination, including, among other things:

- Relocation-related expenses;
- Economic losses resulting from Plaintiff's withdrawal from structured MBA recruiting processes;
- Foregone employment opportunities reasonably declined in reliance on Defendant's written offer; and
- Other measurable economic harm to be proven with reasonable certainty.

### D.   Pre-Judgment and Post-Judgment Interest

Pre-judgment and post-judgment interest as permitted by applicable law.

### E.   Costs of Suit

Costs of suit and such other and further relief as the Court deems just and proper.

## V.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:  Feb. 28____, 2026.

Signature of Plaintiff        *Brian Aly*

Printed Name of Plaintiff      Brian Aly



August 14, 2025

Brian (Brian) Aly
874 East El Camino Real
Apt. 408
Sunnyvale, California 94087
United States of America

Dear Brian,

Apple is delighted to offer you the position of Product Manager, Apple Ads Campaign Optimization. In your new position you will report to Sanghoon Kwak with the effective start date of Monday, November 03, 2025. We look forward to welcoming you to Apple.

## Compensation

Apple offers a highly competitive package of compensation and benefits. The details of your package are set forth below.

### Salary

You will receive an annual salary of (US)$215,000 (less deductions required by law) payable every other week in accordance with Apple's standard payroll procedures. Apple reserves the right to modify salaries and benefits from time to time as it deems necessary.

### Hire-On Bonus

You will be eligible to receive (US)$100,000 in incentive bonuses, subject to mandatory deductions and the following eligibility rules. You will be eligible to receive a hire-on bonus of (US)$70,000 (less deductions required by law), subject to the following terms and conditions. In order to earn the bonus you must be actively employed by Apple for 12 months following your start date. Apple will advance you payment of the bonus in the next regular payroll cycle following your first 30 days of active employment. However, should you voluntarily terminate your employment with Apple within 12 months of your start date, and thus fail to meet the conditions to earn your bonus, you will be responsible for reimbursing all or part of the advance bonus payment at Apple's sole discretion. You will additionally be eligible to receive a second bonus of (US)$30,000 (less deductions required by law), subject to the following terms and conditions. In order to earn the second bonus you must be actively employed by Apple for 24 months following your start date. Apple will advance you payment of the bonus in the next regular payroll cycle following your first 12 months of active employment. However, should you voluntarily terminate your employment with Apple within 24 months of your start date, and thus fail to meet the conditions to earn your bonus, you will be responsible for reimbursing all or part of the advance bonus payment at Apple's sole discretion. By your signature below, you authorize Apple to deduct any unearned bonus advances from your final paycheck.

### Discretionary Bonus

You will be eligible to receive an annual cash bonus with a target bonus amount of 10% of your base salary. Bonuses are discretionary and awarded based on your individual performance, Apple's overall performance, and when your employment begins during the fiscal year. As a result, bonuses awarded in the first year of employment typically range between 5% and 10% of base salary. Whether bonuses are paid and the amount and timing of any bonus payments is determined at the sole discretion of Apple.

### Restricted Stock Units

We will recommend that you be granted an award of Restricted Stock Units (RSUs) with a value of (US)$400,000 on the date of grant. This award is subject to the approval of the Compensation Committee of the Board of Directors (the Compensation Committee), on a date to be determined. The number of RSUs will be determined by dividing (US)$400,000 by the Nasdaq closing price of a share of Apple stock on the grant date and rounding up to the nearest whole share.

An RSU is the right to receive shares of Apple common stock upon vesting; one unit represents one share of Apple

stock. After Compensation Committee approval, the specific terms and conditions applicable to the RSUs, including the vesting schedule, will be available in the RSU award agreement. The RSUs will be subject to the terms and conditions of Apple's 2022 Employee Stock Plan as well as the terms and conditions of the RSU award agreement.

## Benefits

You will be eligible to participate in Apple's comprehensive benefits program. Review the Full-Time Corporate Benefits Program Summary for more details.

Upon hire, you can immediately enroll in the Apple 401(k) Plan, to which both you and Apple will contribute. As a convenience to you, if you do not elect an Apple 401(k) contribution amount within approximately 30 days after your employment with Apple begins:

- You will be automatically enrolled in the Apple 401(k) Plan with a before-tax contribution of 3 percent of your eligible base pay.

- You will also be enrolled in an automatic increase program, which will increase your before-tax contribution by 1 percent each year on the anniversary of your automatic enrollment date, to a maximum of 6 percent.

- You can opt out of either program at any time, as well as change the amount of your contribution.*

*Automatic enrollment and automatic increase are not available to international transfers.

### Bridge of Service

If You're rejoining Apple within two years of your departure, you may be eligible for credit for previous time worked at Apple or an Apple-designated affiliate. Service credit may affect the calculation of certain benefits including your vacation accrual rate and Apple 401(k) Plan Match.

### Relocation Package

In connection with your employment, we are pleased to provide you with assistance to support your relocation. Your relocation will be supported by both the People team, as well as by relocation service providers. You will be contacted shortly to begin arrangements and provide specifics of your relocation package ("Standard Domestic"). Your relocation date should be the same as your Apple employment start date or another date previously approved by your manager. You will have 6 months from your relocation date to utilize all your relocation benefits. At the end of the 6 month period, any unused relocation benefits will expire. Please note that in order to earn your relocation package, you must be actively employed with Apple for 12 months following your start date. If you resign your employment from Apple within 12 months of the commencement of your relocation, you may be responsible for repayment of certain items and a prorated portion of the relocation package at Apple's sole discretion. In the event repayment is required, you agree and authorize Apple to deduct the amount owed from your final paycheck to the extent permitted by local law. Review the Relocation Package Summary for more details.

## Conditions

This offer is contingent on the following conditions:

- On your first day of employment, and possibly from time to time thereafter, you must show proof of identity and legal right to work in the United States as required by federal immigration law. If you are unable to provide documentation of your authorization to work in the United States, Apple may terminate your employment.

- Due to U.S. Department of Commerce requirements, and the U.S. Immigration and Naturalization Act, you will be required to sign an assurance regarding obligations not to export controlled technology or software to certain countries. If you're a citizen of a restricted or embargoed country (as identified by the Department of Commerce), Apple could be required to obtain an export license from the Department of Commerce. Apple will work with you to obtain this license within a time limit established by Apple. If for any reason Apple doesn't receive a license within the established time frame, Apple may terminate your employment.

- You must sign the Intellectual Property Agreement. Any exceptions or approvals required under the terms of the Intellectual Property Agreement must be approved by your division's Senior Vice President and Apple's Legal Department prior to your beginning work.

- We believe that every employee should use good judgement and exercise uncompromising integrity when

conducting Apple business. By accepting this offer, you acknowledge that you have received and read Apple's Business Conduct Policy and that you agree to comply with its terms.

- You must receive a satisfactory background check in accordance with Apple policy.

If any of the above conditions is not satisfied, Apple may withdraw this offer of employment.

Your employment relationship with Apple will be at will. This means that either you or Apple may terminate the employment relationship at any time and for any or no reason with or without notice.

Your employment will be governed by and interpreted under the laws of the State of New York, without regard to conflict of law principles. This offer letter is intended to outline the terms of your employment with Apple and supersedes and fully replaces any previous communications from Apple or its representatives about your employment.

By signing this letter you agree that these are the only terms and conditions of your employment and acknowledge that you have not relied upon any other promises or representations, except those made in this letter.

Please accept this offer by Friday, August 15, 2025 and confirm your start date with your recruiter. We must receive your acceptance of this offer no later than 5:00 p.m. Pacific Time that day. If you have any questions regarding this offer or any of its enclosures, please contact Tyler (Recruiting) Brown at brown_tyler@apple.com.

Sincerely,


Apple Worldwide Recruiting
On behalf of Apple Inc.



I accept the offer (sign below):

I understand that by electronically signing this document by typing my full name below, that I acknowledge, agree and attest that the information provided by me is true and correct and I am freely intending to create and adopt as my own a legally binding electronic signature that carries the same legal effect and enforceability as my handwritten signature.

Signature: Brian Aly (Electronically signed)
Date: 8/14/2025

Electronically signed by alybrian1@outlook.com, on 2025-08-14T23:12:00.073Z, IP: 10.0.106.79


Apple Inc. | One Apple Park Way | Cupertino, California 95014 | 800.473.7411


Apple Confidential
2019.1v7



Date:        **February 2, 2026**

To:        **Brian Aly**                                    Employee ID**: 770509**
From:      **Sanghoon Kwak**
Re:         Termination of employment

_____

You have failed to successfully meet the objectives and expectations of your position.  Therefore, your employment with Apple will be terminated effective February 9, 2026.

Your final pay that includes regular pay through your termination date, all accrued unused vacation pay and any ESPP contributions made in the current period will be sent to you by Payroll via your normal payment method.

If you have information that indicates the decision to terminate your employment was not made in accordance with Apple policy or if you have new information that you believe would alter this decision, you may request a review per Apple's Decision Review process. Your request for a Decision Review must be received within two months of your termination date. To request a Decision Review or get more information about the process, contact People Support at 800-473-7411.

As a reminder, your obligations under the Intellectual Property Agreement ("IPA") continue even after your employment with Apple ends. If you need a copy of your signed IPA please contact People Support at 800-473-7411.

Although your pay and most of your benefits will end on your last day of employment, you may have the option of continuing some of your benefit plans, including your current health care coverage. A general information packet will be mailed to your home within two weeks of the date your employment or coverage ends. If you timely elect to enroll in COBRA and pay any applicable premiums, then your healthcare coverage will be retroactively effective to the day after your Apple coverage ended. You will also receive a COBRA packet from Apple's COBRA vendor, typically within two weeks (but not longer than 44 days) of your employment end date, that contains time-critical information and explains your options for continuing healthcare coverage. Contact People Support at 800-473-7411 if your address has or will change.

**encl:    Unemployment Insurance Brochure**

           **When Benefits End brochure**

**CC:      Personnel File**

Rev. January 2025